Tyler Smith, OSB# 075287
Email: tyler@ruralbusinessattorneys.com
Yasha Renner, OSB# 134681
Email: yasha@ruralbusinessattorneys.com
**TYLER SMITH & ASSOCIATES P.C.**
181 N. Grant St., Suite 212
Canby, OR 97013
Telephone: 503-496-7177
Facsimile: 503-212-6392

Attorneys for Plaintiff Natalya V. Vasilenko

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NATALYA V. VASILENKO, an individual,<br><br>   Plaintiff,<br><br>v.<br><br>THE CITY OF PORTLAND, a municipal corporation,<br><br>   Defendant. | Case No.<br><br>**COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

### INTRODUCTION

1. This case is about the curious and arbitrary manner in which the City of Portland (the "City" herein) devised, implemented, and enforced its vaccine mandate (the "Mandate") for all City employees.

2. Plaintiff Natalya Vasilenko is a former employee and accountant for the City whose employment was terminated on November 10, 2021, because she failed to meet "minimum qualifications" for employment due to the City's brand new Mandate.

3.      The City's Mandate, however, is a house of cards without any rational content, except for the bare injunction "Thou shalt be vaccinated or else."

4.      The Mandate was advertised to City employees as duly adopted pursuant to lawful authority of the City Council.

5.      On August 30, 2021, the City Council announced the Mandate in an email to all City employees, but not before a local media outlet leaked a draft. "Effective Oct. 18, 2021," the email read, "it will be a requirement of every position at the City of Portland to be fully vaccinated for COVID-19. Exceptions will be allowed for medical and religious reasons that meet legal standards."

6.      Purportedly, the Mandate was thus conceived and promulgated by the City Council.

7.      Only a few days later on September 3, 2021, Chief Administrative Officer Tom Rinehart sent an email to all City employees, stating that the "City Council announced a new policy requiring all City of Portland employees to be fully vaccinated for COVID-19 or receive a medical or religious exception by Monday, Oct. 18. Those who do not fulfill this requirement will be separated from City employment on Tuesday, Oct. 19."

8.      The Mandate was quickly implemented, so quickly in fact that the City began enforcing the Mandate before it even notified employees when they would be returning to work. Like other City employees, Plaintiff had been approved to work remotely—from Keaau, Hawaii.

9.      Attached as **Exhibit 1** is a true and accurate copy of Plaintiff's telework agreement.

10.     In the meantime, Plaintiff requested an exception to the Mandate on the basis of her sincerely held religious beliefs, in order to meet the City's deadline of September 17, 2021. Attached as **Exhibit 2** and incorporated herein is a true and accurate copy of Plaintiff's request, which was approved on October 6, 2021, on condition that she comply with workplace safety protocols.

11. Long before the City required employees to return to the workplace, Plaintiff was required to accept the City's proposed accommodation in order to comply with the Mandate and keep her job. Upon learning this, Plaintiff appealed the decision and informed the City's human resources personnel that the accommodation was not reasonable, among other objections.

12. In her written appeal, Plaintiff also objected to the personal protective equipment the City required that she wear all day—a KN95 respirator—when she eventually returned to the office. In lieu of the City's premature accommodations, Plaintiff requested that she continue working remotely as she had been doing since March 16, 2020, with the City's express approval.

13. Plaintiff's appeal was denied on October 15, 2021, despite her prior authorization for telework until August 17, 2022.

14. On October 20, 2021, Plaintiff was provided notice of non-disciplinary separation from employment, because she failed to meet "minimum qualifications" for City employment.

15. On October 27, 2021, Plaintiff participated in a virtual due-process meeting, during which she reiterated her objections to the City's proposed accommodation, again stating that the required respirator would deprive her of oxygen throughout the workday and prevent her from performing her job. Instead, Plaintiff requested that she be allowed to wear a regular cloth mask when eventually needed back at the office and, until then, to continue teleworking. When Plaintiff asked why she could not continue teleworking, no answer was given.

16. At the time of the due-process meeting, more than half of the City's workforce was still working from home, with the date of workplace reentry unknown. Indeed, the very next day, October 28, 2021, Mr. Rinehart wrote an email to all City employees, stating: "Please know, we remain committed to providing at least six weeks' notice before employees are expected to change their work setting."

17. In the same email, Mr. Rinehart clarified that pursuant to official workplace accommodations, unvaccinated employees were required to wear KN95 masks "in all Citywide worksites," among other onerous requirements reserved only for unvaccinated employees.

18. Plaintiff, however, was not working at any City worksite, nor was she provided any notice that her previously agreed work setting would be changing. Indeed, Plaintiff was already teleworking when she merely asked why she could not continue teleworking.

19. Nevertheless, Plaintiff was discharged on November 10, 2021, despite the fact that the City never amended or revoked her telework agreement and never notified her when she was expected to return to the office in person.

## JURISDICTION

20. Plaintiff incorporates paragraphs 1–19 as if fully set forth herein.

21. This Court has original jurisdiction pursuant to Title VII of the Civil Rights Act of 1964 (codified as amended at 42 U.S.C. § 2000e *et seq.*).

22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c) because defendants may be found in this district and because a substantial part of the events giving rise to claims alleged in this complaint occurred in this district.

23. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within the applicable statutory period concerning Plaintiff's claims arising under Title VII. Plaintiff received a right-to-sue letter, attached herewith as **Exhibit 3**, and timely filed this complaint within 90 days of receipt.

## PARTIES

24. Plaintiff is a resident of the State of Hawaii and a former employee of the City.

25. Defendant City is a municipal corporation in Multnomah County and a political

subdivision of the State of Oregon.

## FACTUAL ALLEGATIONS

26.     Plaintiff incorporates paragraphs 1–25 as if fully set forth herein.

27.     At all relevant times, Plaintiff was employed full time in the classified service of the City and had completed her probationary status on July 13, 2020.

28.     Plaintiff's telework agreement with the City authorized her to work "remotely on a regular and recurring basis at a location other than a City-owned or leased facility or at City field sites." The agreement became effective on August 17, 2021, and was intended to continue for a period of 12 months until at least August 17, 2022. Until then, the City had agreed to allow Plaintiff to telework full time, Monday through Friday from 9:00 a.m. to 6:00 p.m., from the primary location of Keaau, Hawaii.

29.     Plaintiff's employment was subject to a collective-bargaining agreement with the District Council of Trade Unions (DCTU) and the labor agreement attached as **Exhibit 4**. To the extent this labor agreement is valid and enforceable, it provided, in pertinent part: "For those employees who are granted an exception, the City will make every effort to provide reasonable accommodations as required by law, including a temporary accommodation where necessary, for requesting employees to maintain employment without creating a direct threat to the safety or health of themselves or others in the workplace."

## COUNT I
## RELIGIOUS DISCRIMINATION
## (42 U.S.C. § 2000e-2)

30.     Plaintiff incorporates paragraphs 1–29 as if fully set forth herein.

31.     Title VII of the Civil Rights Act of 1964, as amended, prohibits disparate treatment of employees because of their religion. 42 U.S.C. § 2000e-2(a) ("It shall be an

unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

32. Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j).

33. Defendant City is an employer within the meaning of Title VII and employs more than 5,000 employees.

34. As a disciple of Jesus Christ, Plaintiff has bona fide and sincerely held religious beliefs that prevent her from receiving any of the vaccines for protection against COVID-19.

35. Defendant City had an affirmative duty to offer a reasonable accommodation that eliminated the conflict between the Plaintiff's religious belief and the City's Mandate, as applied to Plaintiff as an employment requirement validly adopted (i.e., pursuant to lawful authority).

36. While Plaintiff was offered an exception to the Mandate—which by itself would have reasonably eliminated the conflict under the circumstances—the *secondary conditions* (the "Rules for Unvaccinated Employees" herein) attached to the City's offer were patently unreasonable given Plaintiff's prior authorization for routine telework and the applicable labor agreement in force. *Cf. Maroko v. Werner Enterprises, Inc.*, 778 F. Supp. 2d 993 (D. Minn. 2011).

37. At no time did the City terminate, amend, or revoke Plaintiff's telework agreement, or otherwise claim that continuing the agreement would pose an undue hardship on the City.

38. Since there was no reason to not maintain the status quo, as requested by Plaintiff, it follows that the City's rejection of her requests to continue teleworking was motivated by Plaintiff's bona fide religious beliefs and need for an accommodation.

39. Moreover, on information and belief, some City employees who were regarded as "essential" or who had requested medical exceptions received more favorable accommodations than Plaintiff, including the option of teleworking full time from home.

40. In addition, the City's Rules for Unvaccinated Employees—a purportedly neutral employment policy based on one's vaccination status—are intrinsically discriminatory because they segregate, classify, humiliate, and disparately impact the City's religious employees and deprive or tend to deprive them of "employment opportunities or otherwise adversely affect [their] status as an employee" because of such employee's religion. 42 U.S.C. § 2000e-2(a)(2).

41. The Rules for Unvaccinated Employees include the following:

(a) Unvaccinated (i.e., religious) employees must wear a KN95 face covering in all indoor City worksites, at all times of the day or night, regardless of whether the employee has the ability to work in a single office with the door closed, or in a City vehicle; as soon as the KN95 mask is issued, it must be worn.

(b) Unvaccinated (i.e., religious) employees will be fitted for an N95 respirator and may be asked to wear it in lieu of the KN95 when social distancing is not possible, such as when the employee's work requires close confinement with vaccinated employees, who apparently may ask a fellow employee to put on the N95 respirator.

(c) To the extent possible, unvaccinated (i.e., religious) employees are required to "socially distance" (i.e., voluntarily segregate) themselves from all other employees, including, for example, by eating alone or taking breaks outside.

  (d) In all City-owned congregated living or work spaces, unvaccinated (i.e., religious) employees are required to eat in their individual living spaces or, if not possible, to eat separately from other employees such as eating outside.

  (e) Unvaccinated (i.e., religious) employees are required to submit to periodic testing for COVID-19 to ensure that they alone are not infected.

  (f) *Vaccinated employees* who see or suspect that unvaccinated (i.e., religious) employees are not complying with the Rules for Unvaccinated Employees are instructed to inform their manager, supervisor, human resources, and even beyond one's usual chain of command—all to ensure strict compliance with the Rules.

42. In addition, the Mandate was not validly enacted pursuant to lawful authority. Thus, Plaintiff was not subject to the Mandate as a bona fide employment requirement, such that the City could reasonably condition Plaintiff's request for an exception based on her vaccination status.

43. As a result of the City's religious discrimination, Plaintiff has suffered an adverse employment action, emotional distress, and loss of income.

44. Plaintiff is entitled to backpay and front pay (in lieu of reinstatement) pursuant to 42 U.S.C. § 2000e-5(g) and compensatory damages pursuant to 42 U.S.C. § 1981a(b).

45. Plaintiff is entitled to recover a reasonable attorney's fee and litigation costs pursuant to 42 U.S.C. § 2000e-5(k).

## COUNT II
## RETALIATION
## (42 U.S.C. § 2000e-3)

46. Plaintiff incorporates paragraphs 1–45 as if fully set forth herein.

47. Title VII prohibits an employer from retaliating against an employee because she has opposed any practice made an unlawful employment practice. 42 U.S.C. § 2000e-3(a).

48. Plaintiff objected to the City's proposed accommodation as patently unreasonable and as tending to discriminate against her on the basis of her sincerely held religious beliefs.

49. Plaintiff was terminated long before the City even began its multi-phase approach to requiring classified employees to return to in-person work.

50. Plaintiff's appeal and repeated requests to continue teleworking fell on deaf ears, and the City's refusal to answer why, during the due-process termination proceedings, amounted to a failure to engage in the interactive process in good faith.

51. Instead, the City retaliated against the Plaintiff for engaging in protected activity under Title VII and daring to question the City's unreasonable and heavy-handed implementation of the Mandate. Consequently, Plaintiff has suffered an adverse employment action.

52. Plaintiff is entitled to backpay and front pay (in lieu of reinstatement) pursuant to 42 U.S.C. § 2000e-5(g) and compensatory damages pursuant to 42 U.S.C. § 1981a(b).

53. Plaintiff is entitled to recover a reasonable attorney's fee and litigation costs pursuant to 42 U.S.C. § 2000e-5(k).

### COUNT III
### THE CITY'S MANDATE IS VOID
### (28 U.S.C. §§ 2201–2202)

54. Plaintiff incorporates paragraphs 1–53 as if fully set forth herein.

55. The Mandate was ostensibly promulgated by authority of the City Council, whose authority is circumscribed by the charter of the City of Portland, as amended (the "Charter").

56. Section 2-117 of the Charter provides, in pertinent part: "In the transaction of legislative or judicial business the Council shall act only by the ordinance."

57. Section 2-119 of the Charter provides: "The enacting clause of all ordinances shall be the words 'The City of Portland ordains.'"

58. Section 2-122 of the Charter provides: "An ordinance when passed by the Council

shall be signed by the Auditor. It shall be carefully filed and preserved in the custody of the Auditor."

59.     The Mandate purports to be a legislative act of the City Council that affects every person employed by the City, with a few exceptions not relevant to this case.

60.     The Mandate was not enacted by any ordinance of the City Council. Therefore, on its face and as applied, the Mandate is ultra vires and was promulgated without lawful authority.

61.     The Office of the Chief Administrative Officer, together with the Bureau of Human Resources, purported to promulgate additional rules and policies in connection with the Mandate and to enforce the Mandate against employees. Neither, however, had the requisite legal authority to do so, for the City's Mandate was void *ab initio*.

62.     On information and belief, the City entered into collective bargaining with various labor organizations in order to enforce its arbitrary Mandate as a matter of employment relations and to establish *de facto* minimum qualifications for continued employment.

63.     The Mandate was the inducing cause of collective bargaining, which was done in bad faith with respect to a prohibited subject of bargaining. Consequently, any resulting labor agreement on the subject was based on a fraudulent or material misrepresentation of fact, namely, that the Mandate was a lawful exercise of legislative authority by the City Council.

64.     In addition, Section 4-101 of the Charter provides:

"All appointments and promotions to positions in the classified service shall be made solely on the basis of merit and fitness demonstrated by a valid and reliable examination or other objective evidence of competence. Such appointments and promotions shall provide fair and equal opportunity without regard to race, religion, gender, marital and family status, national origin, age, mental or physical disability, sexual orientation, gender identity, source of income, and such other criteria as determined by the City Council by ordinance. The goal of the merit system is a workforce that reflects the aspirations and values of the City it serves."

65.     Section 4-201 of the Charter provides:

"Consistent with all applicable federal and state laws, the City Council shall provide by ordinance for the establishment, regulation, and maintenance of a

merit system governing personnel policies and rules necessary for effective administration of the employees of the City's offices, bureaus, and agencies, other than the Office of the Auditor, including but not limited to classification and pay plans, recruitment, examinations, disciplinary actions, types of appointments, relationships with employee organizations, and appeals and hearings. Such ordinances shall be consistent with the merit principles in Article 1. Employees in the Office of the Auditor shall be subject to the policies and rules established by the City Auditor under Chapter 2, Article 5 of this Charter."

66. The Mandate is fundamentally opposed to the merit principle in the City's Charter.

67. The Mandate purports to superadd "minimum qualifications for City employment" that have nothing to do with merit or objective evidence of competence. Therefore, the Mandate, on its face and as applied, violates section 4-201 of the Charter, including the merit system and any existing ordinances governing personnel policies and recruitment standards.

68. The City's Office of Management and Finance, including the Office of the Chief Administrative Officer and the Bureau of Human Resources, lacks independent authority to unilaterally adopt the Mandate, either as a qualification of employment or as a public health rule.

69. Accordingly, Plaintiff is entitled to a declaratory judgment against defendant that the Mandate is ultra vires and void, as it violates the foregoing sections of the City Charter and, thus, as applied to Plaintiff, is unenforceable as a minimum qualification of employment notwithstanding the provisions of any applicable labor agreement to the contrary, which are likewise void or voidable.

70. Further, Plaintiff is entitled to a declaratory judgment that the City Charter prohibits the City from imposing a vaccination requirement as a qualification of employment for any position in the classified service, either unilaterally or by collective bargaining as a mandatory or permissive subject of employment relations, as defined in ORS 243.650.

## PRAYER FOR RELIEF

*Wherefore*, Plaintiff respectfully prays for judgment granting the following relief:

A. A declaration that the City's Mandate, on its face and as applied, is ultra vires,

void, and unenforceable;

B. A permanent injunction, enjoining the City and its officers, agents, employees, attorneys, and successors in office from engaging in the unlawful employment practices alleged above;

C. An award of back pay and benefits, with prejudgment interest, in an amount to be proved at trial;

D. An award of front pay in lieu of reinstatement in an amount to be proved at trial;

E. An award of compensatory damages in an amount to be proved at trial;

F. An award of Plaintiff's reasonable costs and expenses of this action, including a reasonable attorney's fee; and

G. Such other and further relief as the Court deems equitable and just under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all questions so triable.

Dated: August 16, 2022.

    Tyler Smith & Associates P.C.

    By: *s/ Yasha Renner*
        Yasha Renner, OSB# 134681
        181 N. Grant St. STE 212
        Canby, OR 97013
        Phone: 503-266-5590  Fax: 503-212-6392
        yasha@ruralbusinessattorneys.com
        Attorneys for Plaintiff